Good morning, your honors. May it please the court, Mr. Brackett, I'm James Tree, I'm representing Ms. Rocha on her claim for disability benefits. She's the claimant that has an eighth grade education, special education background, difficulty reading and comprehending, significant problems with many physical impairments due to her morbid obesity, her degenerative disc disease, her anemia and her frequent and uncontrolled bleeding. In this particular case, the administrative law judge found a rather detailed residual functional capacity that was for less than a full range of sedentary work and included 26 non-exertional limitations as part of that. We start back historically with Heckler v. Campbell, which is the U.S. Supreme Court case where the Second Circuit had found that Campbell, even though he could do the full range of light work and had no non-exertional limitations, that the commissioner could not use the grid rules because he was entitled to an individualized review and entitled to a vocational expert at his hearing. Well, the Supreme Court says that's not right. They felt that although it's true that a person is entitled to an individualized review and normally the majority of the evidence is adduced through testimony at hearing, that in this case, in Campbell's case, that since he could do the full range of light work, there are no non-exertional limitations. The grid rules specifically were met and followed and so that ALJ, although the commissioner had the burden of establishing other jobs, they can meet that burden through taking administrative notice or adjudicative notice of the medical vocational guidelines, which I'll refer to as the grid rules. We then fast forward 16 years and this court in Tackett had said that Mr. Tackett had one non-exertional limitation, that he had to shift positions every 30 minutes, that that one non-exertional limitation required vocational expert testimony and this court remanded that because the ALJ did not receive, the evidence showed that there was not support for the ALJ's decision. They could do other work because where does the ALJ get the decision? I mean at step five, the burden is shifted. It's on the commissioner and where does the ALJ get his proof from? The agency's position is that you get your proof either from a vocational expert or you get it from the grid rules, but it has to meet exactly, it can only be exertional limitations, it can't be non-exertional, or you use the grid rules as a framework, but when you use it as a framework, you have to have evidence that those non-exertional limitations are not significant and that evidence comes from SSRs, Social Security rulings. So is your theory here that the record shows essentially a continuing problem of persistent pain that prevented her from doing any kind of work, even light sedentary work? Well, the ALJ found she couldn't do light work. The ALJ found she could only do a very limited range of sedentary work. Okay, I rephrased my question. So I'm still trying to understand what the theory is. I understand she's obese, I understand she has a host of other medical issues that she's presented with over the years, but I guess what I'm trying to figure out is what's your theory as to what prevents her from doing any work at all? So our theory is that we're at step five, where the burden is on the commissioner, and the ALJ did not meet that burden of identifying jobs that she could do based on the ALJ's own residual functional capacity because he was required to have a vocational expert. You're not answering my question. I'm trying to figure out what the medical diagnosis is here that you insist is making her completely unable to do any work at all. I mean, I see a long history of medical visits for a variety of issues, but I'm trying to figure out what the common thread is. Your Honor, that's not the issue in this case. I'm sorry. The issue in this case is that Ms. Rocha, she met her prima facie case of showing through step four that she can't do her past relevant work. The burden shifted to the commissioner to show that there was a theory of this case based upon the ALJ's own findings that she had severe obesity, that she had severe anemia, that she had severe degenerative disc disease, that she had severe headaches, that she had severe depression. That was the ALJ's findings. What do we do with the two-year gap in the medical treatment? Well, we throw it out because it's not true because she had treatment 27 of 35 months between her alleged onset date and ALJ hearing. That was a factual error that the ALJ made in its credibility finding. It looked to me like she basically got her medical care from hospital emergency rooms that she visited over a long period of time presenting with a host of different issues. And that's why I'm trying to get you to explain to me what it is that prevents her. Is it any one thing or is it just that she has so many medical problems that she can't do anything? It's a combination of all those. There were many severe impairments the ALJ found. And for example, as a result of her impairments, the ALJ said that she could never climb ramps or stairs. There's a social security ruling, it's 85-15, which says if a person can never climb ramps or stairs, they should be found disabled. And that in all work, there's going to be a requirement to climb some ramps or some stairs. That's SSR 85-15. See, it's the agency's policy that if the judge doesn't use a vocational expert, then the judge in the non-exertional impairments, he has to either rely on some evidence. It's not substantial evidence, it's not no evidence. There's no evidence here that her ability to never use ramps and stairs, and that's not what Ms. Rocha is saying, that's what the ALJ said. The ALJ said she can never climb a ramp or a stair. Never. Now that was supported by two state agency physicians who said that she could never climb ramps or stairs. It was supported by the medical expert at the hearing who testified that she could never climb ramps or stairs, and he agreed with the state agency physicians. And it was opined to by the consultative examiner that social security hired that said she could never climb. One of the issues that you attack is the issue with regard to obesity. Could you explain to me in the record where that shows she was unable to do any kind of work because of obesity? We're relying on the ALJ's findings. We're not going outside of those. We're relying on the ALJ's findings, that based on the ALJ's findings, that his decision is full of legal error. Counsel, let me ask you the question directly. The ALJ noted that there were observations by the treating physicians that she was obese, but then he said there was little evidence in the record to suggest that Rocha was limited by her obesity. How is that finding not supported by substantial evidence in the record? Look, the ALJ's decision is very inconsistent. He said this is weak evidence in this case when he was evaluating credibility, but he said when he evaluated RFC, he said she can do less than the full range of sedentary work. In addition to not being able to do the full range of sedentary work, she's got 26 non-exertional limitations based on the medical evidence. I'm focusing on one, and I don't understand why you're being so hostile to my questions. I'm just trying to understand where in the record you think that the ALJ erred with regard to consideration of obesity as it might prevent some type of work that would render her completely disabled. That's not the issue in this case respectively, Your Honor. The issue in this case is not whether there's evidence that she has to produce, that she's completely disabled. She met her burden at step four. The question in this case is whether or not the ALJ has produced evidence that there's other work that she can do at step five. That's the issue in this case. I'm looking at that, and the ALJ is saying, in essence, I don't see a nexus between her obesity and her inability to work. Okay, let's assume that's true. Well, that's what he said. Okay, let's assume it's true. I'm going to say, okay, I'll assume it's true. Now let's move on. Is the ALJ's decision supported? If everything the ALJ says is correct, 100% correct, his RFC is correct, his credibility findings are correct, his evaluation of the medical evidence is correct, then his decision still needs to be remanded because there's no evidence to support the fact that there's other jobs she can perform at step five. Another example taken from the ALJ's own residual functional capacity finding other than ramps and stairs is his opinion that Ms. Rocha could only occasionally balance. The need to occasionally balance requires vocational expert testimony. Social Security Ruling 96-9P regarding balancing says that if an individual is limited in balancing only on narrow or slippery steps, that may not significantly impact sedentary base, but if their ability to balance includes walking on even surfaces, that would be a very significant. Was there medical evidence to support the idea that she has trouble balancing on level ground? There was no evidence in the record that she had any problem balancing on narrow surfaces, moving surfaces, slippery surfaces. What the evidence was in the record was from the state agency physicians that she could only occasionally balance due to her severe obesity and due to her degenerative disc disease and due to her sensory deficits in her legs. How do we square that with her statements to the treating doctors that she was continuing to walk her children to school as late as January 11, 2011? There's no inconsistency there at all, Your Honor. Doesn't walking require balance? I guess the frustration I'm having is that I'm relying on what the ALJ said. I'm not trying to attack the ALJ's RFC. We have to accept what the judge said in this case or you have to remand it because of the Chinnery Doctrine. The Chinnery Doctrine, Your Honor, says that the court or the government can't come in and argue something that the ALJ didn't argue. The ALJ said that she could only occasionally balance. I'm not saying that. I'm not trying to argue that the ALJ erroneously left out a limitation of occasionally balancing. I'm saying the ALJ said she could occasionally balance. I'm saying that the Social Security ruling says, and I'll quote this from SSR 96-90P because this is the essence of the case, it is important to state in the residual functional capacity assessment what is meant by limiting balance in order to determine the remaining occupational base. The ALJ didn't do that. See, we're at step five. The burden's on the ALJ to come up and show that there is jobs that this lady can do based on his own RFC. So we're not attacking the RFC. This is not like the last case we heard. This is a different case. This is a case about where we're accepting the residual functional capacity of the administrative law judge, but we're showing that the administrative law judge's own findings are not supportive that she could do other jobs without vocational expert testimony. There's other examples. No concentrated exposure to noise. Now Social Security ruling 96-9P talks about noise. It says all work environments entail some level of noise. Restriction on the ability to work in a noisy workplace must be evaluated on an individual basis. Normally a vocational expert is necessary. Now that's not our findings. See, judge, that is the ALJ's findings that she cannot tolerate concentrated exposures to noise. The administrative law judge found that she cannot concentrate exposure concentrated exposure to odors and dust. Again, Social Security ruling 96-9P says restrictions to avoid exposures to odors or dust must be evaluated on an individual basis. ALJ didn't do that. ALJ didn't call a vocational expert. So is the relief that you're asking for basically a remand so that the ALJ can call a vocational expert and ask him the questions? Yes. I'm sorry I'm frustrated, but this is not the type of case where we're attacking the ALJ's RFC or saying he made an error in the RFC. We accept the RFC. Well, not seeking credit is true. Just a remand. Yes, just a remand to call a vocational expert on this complicated vocational case. Because the Social Security rulings say when you have a complex case, you need a vocational expert. That's what the Social Security rulings say. You want to save the remaining time for rebuttal? Yes. Thank you. Good morning, and may it please the Court. My name is Christopher Brackett on behalf of the Commissioner. I'm asking the Court to affirm the judgment of the District Court, which upheld the ALJ's findings and supported by substantial evidence. That is, that his interpretation of the record when he concluded that despite Ms. Roach's severe mental and physical impairments, she retained the ability to perform unskilled sedentary work and was therefore not disabled. And even though there were non-exertional limitations, those non-exertional limitations did not significantly erode the occupational base for sedentary work. Would you address specifically the restriction with respect to climbing ramps and stairs? Climbing ramps and stairs, yes, Your Honor. I kind of thought the Court was going to go to that one. The other restrictions are, don't forget noise and death. Yeah, noise and then death. Yes, Your Honor. The climbing ramps and stairs, Mr. Tree pointed to Ruling 8515 and said that an inability to climb ramps and stairs must result in disability. That's not what 8515 says. 8515 refers to climbing ramps and stairs as activities that occur in our home life and in work life. And when considering it, it does occur in some jobs more than others. Now our position here is that sedentary work, being work that's performed primarily from the seated position. I mean, sedentary work, you're seated for at least six hours a day. That the occupational base is not going to be eroded significantly by those... What I heard counsel argue, which is unique in my experience, is that if an administrative law judge finds that any of those limitations are present, he must call a VE, can't rely on the grid. That's what I heard him say. Your Honor, I think the case law actually says that when the non-exertional limitations present a significant erosion of the occupational base, then a vocational expert's testimony is necessary to support the Step 5 finding. And what's your best case to support that statement? I believe Hupai V. Astru. I said it in my brief and it makes that statement. Excuse me. So the... And Mr. Tree points to 26 non-exertional limitations, but it's not the number of non-exertional limitations. It's what each does to the occupational base. So citing Tackett, where a person has to shift position, well, that kind of limitation is discussed in various rulings that the agency has promulgated as the sit-stand alternative, like a person would have to alternate sitting and standing. And that consistently in our rulings has been a limitation that would require vocational expert testimony. But when you look at a lot of the posturals here, the postural limitations being those that address stooping, crouching, kneeling, crawling, and balancing, the rulings state that when you can perform those on at least an occasional basis, they're not going to have a significant impact on the field of... On the occupational base of sedentary work. The idea there is that a job that's sedentary is going to be requiring you to be in a chair for six hours, you know, with scattered instances throughout the day of getting up. By that very nature, you know, you have six hours of sitting. There's two hours remaining. Well, the ability to do something on an occasional basis means being able to do it for up to two hours over the course of a day. So there's no sedentary job by that logic that would require more than occasional stooping, more than occasional balancing, or more than occasional kneeling. That's why the postural limitations in this instance aren't really significant with the exception of climbing. And I do want to point out one error I made in my brief. I want to correct that on the argument that climbing was included in the occasional limitations. I'm not trying to pull a fast one on the court, that climbing is in fact precluded in the ALJ's decision. I mentioned that earlier in the brief, but I wanted to correct that. That error was on page 44. Thank you. But coming back to the issue of climbing, you know, this is ALJ's finding. ALJ's findings and facts are owed deference when they're reasonable. And it's a reasonable conclusion that a limitation on climbing ramps and stairs, a preclusion of climbing ramps and stairs would not significantly impact the entire field of 200 occupations of sedentary work that the grids take administrative notice of. Also turning to the dust and noise and other environmental limitations, every single one of the environmental limitations considered by the ALJ or found by the ALJ was a limitation on concentrated exposure. This wasn't a limitation on all exposure or even moderate exposure. The claimant could not tolerate concentrated exposure. And 8515, SSR 8515 addresses these environmental limitations and discusses that concentrated exposure is not going to have a significant erosion of the occupational base. That's on page 8 of 8515. When a person has a medical restriction to avoid excessive amounts of noise, dust, etc., referring back to the other postural limitations like temperature or environmental limitations like temperature extremes, the impact on the broad world of work would be minimal because most job environments do not involve great amounts of dust, noise, etc. This was reiterated at least to an extent in 96-9 which addresses specifically a limited range of sedentary work where the RFC discusses, I mean the SSR discusses environmental restrictions stating that few occupations in the sedentary work require extremes of cold, heat, wetness, humidity. These SSRs considered together show that the environmental limitations found by the ALJ did not significantly erode the field of sedentary occupational base. What did the ALJ say about Ms. Rush's ability to balance? He just found that she could balance on an occasional basis. He didn't offer any qualifications about balancing on rough surfaces or anything. So we take that to mean all balancing but she could do that occasionally throughout the day. Since sedentary work is mostly seated and doesn't, you know, in a seated position the balancing wouldn't be implicated, not until one rises and has to walk around the office. That would be a situation where balancing is implicated. But if she can maintain that and do it for two hours over the course of the day, scattered throughout the day, then she can perform sedentary work despite that limitation. That's your argument, not what a VOC expert said. Correct. Our position here is based on the administrative notice of sedentary work in the grids, followed by our publication over the course between 1983 and 1996 of these various SSRs that address these different aspects of functioning. Also, I'd like to address the mental limitations because this was another non-exertional that the ALJ concluded Ms. Rocha had. He basically found that she could perform simple and repetitive tasks, not complex tasks, and that she would benefit from additional time learning new unskilled work that is contemplated in the grids. Unskilled work, work that needs little or no judgment, to do simple duties that can be learned in a short period of time requires four basic abilities. Understanding or remembering and carrying out simple instructions. It's consistent with what the ALJ found. Making simple work-related decisions. The ALJ didn't conclude any limitation in that area. Responding appropriately to supervision, coworkers, and administrations. Again, the ALJ did not find any limitation in that area. In dealing with changes in a routine work setting, the ALJ did not find any limitation in that area. These mental limitations do not significantly affect the ability to perform unskilled work either. I do also want to point out that I'm not up here to tell the court that non-exertional limitations cannot affect the sedentary occupational base. They certainly can. If one of these limitations in mental functioning addressed the ability to interact with coworkers or supervisors, that would be something that could potentially erode the occupational base. If there were manipulative limitations on reaching, handling, fingering, grabbing, that sort of thing, that would affect the occupational base for sedentary work. But the specific limitations here, the postural limitations, the environmental limitations, the mental limitations, they did not significantly erode the occupational base. Thus, the ALJ's conclusion regarding his Step 5 finding, that he was able to rely on the grids, which showed that the claimant was not disabled, was a reasonable one. If the court has any further questions on that? I think not. Thank you. Thank you. Accordingly, we ask that the court affirm the district court judgment and uphold the ALJ's decision as supported by substantial evidence. Thank you. Thank you. You have some rebuttal time left. Regarding environmental limitations, in this case, the ALJ found 12 different environmental limitations. Social Security ruling 8515 regarding environmental limitations says, where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of a vocational specialist. So, we've got that, no concentrated exposure. That's between very little and excessive. Not only do we have one environmental limitation, but we have 12 environmental limitations. Regarding the combination of the effect of non-exertional limitations, Social Security ruling 8315 states that even though section 204 of appendix 2 states that one environmental limitation would not normally significantly affect the range of work existing, numerous environmental restrictions might lead to a different conclusion, as might one or more severe losses of non-exertional functional capacity. In many cases, a decision maker will need to consult a vocational resource. Social Security ruling 8312 states that where the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational expert. Social Security ruling 8312 says that a vocational expert would be necessary in complex vocational cases. Certainly, this is a complex case. The Social Security ruling states that an ALJ at step 5 has the duty in his decision to explain what he means by balancing limitations. That is not Ms. Roach's duty to come forth, but when the ALJ says there is a balancing limitation, the SSR says that the ALJ must come forth and explain in his decision. So a reviewing court has something meaningful to review what those balancing limitations are and to what extent they extend. Counsel, the ALJ cited a January 11, 2011 treatment note at page 7 of his decision in which it states that the claimant could rise from a sitting to a standing position without difficulty. Does that undercut the argument that she has a difficult time balancing? It doesn't because this is the ALJ's finding. This is not Ms. Roach's finding. This is not my finding. This is not my argument. This is the ALJ's finding. The fact that she can rise one time during an evaluation does not undercut the ALJ's finding that she can only occasionally balance is supported in the record. It's supported by the physician that did the consultative exam that said that she could only occasionally balance. It's supported by two state agency physicians who said she could only occasionally balance. And the ALJ in his deference decided to accept that evidence from those medical experts and he incorporated into his formal RFC finding. Thank you. Thank you, Your Honor. I'd like to thank both of you for the argument this morning. And we will have this case as submitted. Ms. Rocha v. Colvin concludes our Social Security arguments. It was an all-day Social Security day. So thank you very much. We appreciate the arguments and we're adjourned.
judges: Hawkins, McKeown, Tallman